Mr. Marshall, the Supreme Court has reconvened. Thank you. Please be seated. Good morning. The first case on the docket is Agenda No. 7-121-199-121-241, Estate of Shelton, Ruth Ann Alford, Executive vs. Rodney Schimel. Mr. Siegler, you may proceed. Mr. Chief Justice, Your Honors, good morning, counsel. May it please the Court, I want to apologize in advance. I seem to have acquired a chest cold in the last couple of days, which is at its height at this moment. My timing is perfect. So I apologize for any croakiness or coughing that may occur. During the course of this argument and in the briefs, the Court may note that powers of attorney are involved. So if I use the phrase POA, doing that for brevity, that is a power of attorney when I'm speaking. I hope that that's permissible. In the case appealed by Rodney Shelton, that's Cause No. 121199, the issue presented is whether Section 2-10.3b of the Illinois Power of Attorney Act applies to a successor agent under a power of attorney before he becomes an acting and empowered agent under that instrument. The trial court in this case dismissed the complaint under Section 2-615 for failure to state a cause of action. The appellate court reversed that dismissal. The complaint here, Your Honors, is premised entirely on the statute cited and alleges that Rodney Shelton, while a named successor agent under his mother's, that's Doris Shelton's, POA, participated in a breach of fiduciary duty committed by his father, Thomas Shelton, who was Doris's acting agent under the POA. When Thomas transferred Doris's interest in family farmland along with his own interest to Rodney and his wife, the alleged wrongdoing by Rodney was that he participated in the breach of duty by his father by failing to inform his mother of that breach and to take action to safeguard her interests. Can you really simply tell me, what was the breach of fiduciary duty? The breach alleged in the complaint is the transfer of an asset, family farmland, in which Doris had an interest at a time when she was alleged to be incompetent and in need of income. That is the stated breach in the complaint. I questioned that in the original appeal of the case as to whether or not that, and before the trial court, as to whether or not that was, in fact, a recognized fiduciary duty and breach. But that is what the complaint states. But you're not arguing that now. You're not challenging whether or not it's a fiduciary duty. I guess I will reiterate that in terms of I still accept and believe that that is the case, that it is not a recognized fiduciary duty. Based on the process of the appeal and the ruling of the third district appellate court, I'm sticking with their holding and the reasons for it. The appellate court reversed the trial court. The trial court found, as a matter of law, that Rodney never became an agent under the POA and that no fiduciary duty ever developed and found that Thomas was the designated agent attorney, in fact, under the POA and had all those powers and discretion that were granted him. In reversing the trial court, the appellate court in the companion case also affirmed the same court in the consolidated case in which one issue was similar. The appellate court held that in that case, which involved a different theory under Thomas's power of attorney, specifically the presumption of fraud as recognized in Illinois, the appellate court held there that a successor agent under a POA does not have a fiduciary duty to a principal before he becomes the acting agent. The court relied on well-established law in that holding and I will address that at the conclusion of my 20 minutes I'm dealing with the case that we appealed first. As the court is aware, both parties petitioned this court for leave to appeal in the respective consolidated cases and both were granted. We submit in this case, Your Honors, that the appellate court erred in holding that the statute involved, Section 2-10.3b, could support a cause of action against a successor agent if he was aware of an imminent breach by a predecessor agent by failing to notify that principal or to safeguard the principal's interest. That is a stated holding in the opinion, page 17 of Appendix A-34. The appellate court also held that Section 2-10.3b, and I quote, imposes certain obligations upon successor agents under a POA. The court held that the statutory provision as written applies to successor agents but only when the successor agent has knowledge of an imminent breach or knowledge of the breach itself and participates in it and that breach is done by another agent using the actual term used in the statute itself, another agent. The statute also uses predecessor agent. In its holding, the appellate court, by the text of the opinion, relied upon three essential bases and rationales for the holding. First, that the heading of the, the title of the successor agents in Section 2-10.3 was indicative that this particular subsection, even though it did not mention successor agent, applied to successor agents because of the title of the general provision. Secondly, the court relied on the fact that the other two subsections, A and C, both clearly apply to successor agents. Those subsections use the exact phrase, successor agent, in each. Subsection A defines what a successor agent is. Subsection C goes into detail about how a successor agent is required, if requested, to provide a certification of authority as an actual agent. So your argument is that that section that's in question here does not apply to successor agents, even though it's in, under the broad heading? That's correct, Your Honor. There is a separate section on co-agents. Correct. Completely. So who is the agent that they're talking about here if you're not, you know, if you're liable for the act of a predecessor agent? Who else could that be? Your Honor, I believe that it's, a couple of things are really important there. First, I believe that it's important that the, that subsection A and C actually refer to exactly successor agent, and subsection B does not. It refers only to an agent being, not being liable for the actions of another agent, unless the exception that's created applies. Subsection 2-10.5C, co-agents, that provision in co-agents, is exactly identical to that in subsection 2-10.3B. They are, the wording is precise. In the co-agent statute, there is no reason to believe that that is accidental or a mistake by the legislature. Those who exact wording and text are used in both of the statutes dealing with co-agents and the one entitled successor agent. So who does this apply to? There is a section on co-agents. There are various scenarios, Your Honor, and I would submit that the legislature was attempting to recite the general rule that there's no precarious liability or strict liability by one agent for the actions of another, which I think is recognized even in the common law. In creating this exception, in doing so, there are a variety of circumstances that can apply. If a power of attorney was drafted before 2011, the effective date of these statutes, you could have co-agents. They're prohibited now technically under the statute, but you could have them. And a successor agent could step into the role of co-agent if a co-agent quit, died, or could not serve for some reason. In the singular designated agent power of attorney like this, a successor agent doesn't become an agent until he succeeds to that position. The statute defines agent in 2-3B. It is the designated attorney in fact. So a successor agent could become an agent later and then still be responsible if the predecessor agent, or in the event of co-agency in an older power of attorney, another agent engaged in wrongdoing. Sir, does the language in Thomas' POA, is it ambiguous with respect to when the successor agent actually assumes the duty of agent? I don't believe so, Your Honor. In paragraph 8, this is a standard statutory power of attorney with statutory language. I don't believe so. I don't believe it's ambiguous at all and when it's strictly construed as I believe it has to be, and the appellate court agreed that it had to be, is not. It states that a successor agent takes power when certain things happen and if those things don't happen, he never becomes an agent. In this case, there is never an allegation. There's no allegation in the complaint that this gentleman ever became an agent under the power of attorney. The appellate court did not. I'm sorry, Your Honor. Is it your position then that he had no obligations because he never became the agent? Yes. He has no obligations under the act and he has no obligations under the power of attorney because he never became agent. He was in the status only of a successor agent, which has no power, authority, or otherwise. Of course, the statute says an agent who has knowledge of a breach or imminent breach, so that sounds like there's an agent that's acting and there's someone else who knows that something is about to happen. Who could that be again under this statute other than a successor agent? It could be a successor agent who has become an agent. I believe that the legislature intended to codify the rule in B, in subsection B and in subsection C of 2-10.5 to cover any scenario that might involve a co-agent situation or the situation of where a successor agent becomes an agent. The provisions do not detract from any other provisions in the act. The provisions don't even detract from any other subsections within 2-10.3 or 2-10.5. It is a statement of the defined term agent and when that agent can be liable, which is generally not the case, it is a statement of the defined term agent. I believe that the fact that this is a specifically defined term agent under 2-3B clearly indicates that the legislature intentionally left that language and meaning it to be an agent. Otherwise, it would have been very simple to say otherwise in subsection B. If they wanted to clarify in the co-agency subsection, they could have done that as well, but the provisions are identical. I will go then, if I could jump a little bit. The appellate court felt that if our theory was correct, that our reading of the subsection would render the co-agent subsection with the same language superfluous. I don't think that it affects that provision at all. It doesn't render it meaningless. It doesn't render an absurd result. The general rule that is stated in both sections of the statute stands clearly under the text as written and it doesn't impact, neither statute is impacted by the other, because the scenario covered is that of agent and another agent, including, if it might be involved, a predecessor agent. The one thing that is clear is that nowhere in the Act is a successor agent mentioned as being liable for anything, including this subsection. Successor agent is not used as a term. A successor agent never becomes an agent until he succeeds to that position. One can be a successor agent forever and never become an agent. That happens many times. So I believe that the superfluous concern of the appellate court is misplaced because I don't believe that it knocks down, knocks out, or renders meaningless any provision of this Act. There are several key rules of construction, Your Honors, that relate to this case. Our overall position is that the court engaged in erroneous statutory interpretation and as the court is well aware, statutory construction has as its goal and primary rule ascertainment and giving effect to the intent of the legislature. Critically, statutory definitions, as indicated in the brief with authorities, statutory definitions control in the construction of the terms of an Act. When a statute defines its terms, those terms must be construed in accordance with the definitions and where a word is used in different sections of the same Act, a court presumes that it has the same meaning throughout. The Act uses agent everywhere. It defines agent very specifically. The only place it defines a successor agent is in subsection A of the particular statutory provision that we are speaking of today. No person has authority under the Act or a power of attorney except the agent. Under Illinois law and the Act itself, the power of attorney instrument, the agency instrument, controls notwithstanding the Act. This power of attorney is a statutory power of attorney and is clear and unambiguous in its terms as to who the agent is, what that agent's authority is, and who the designated successor agents are and what has to happen for them to receive the mantle of authority, none of which is alleged to have occurred in this case. In the consolidated case, your honors, since I need to deal with that I think in my 20 minutes, the specific issue presented is whether a successor agent named in a POA can be retroactively deemed the agent or attorney, in fact, on a specific date by way of a retroactive declaration of incompetency of the primary agent made by a physician. The appellate court found that the power of attorney involved, when strictly construed, clearly designated what had to happen and when it had to happen for someone to be nullified as to their authority as an agent. In this case, the physician's report was acquired over two years after the transaction at issue. When the transaction occurred, Mr. Shelton was a successor agent. The physician's report was acquired during this litigation. The trial court and the appellate court found that the requisite triggering event of physician's report at the time the and forward is the effective rescission of the power of an agent and it cannot be done retroactively. The court found strong policy reasons for that holding as well as the well-established law in Illinois, including the need to provide certainty for agents, successor agents and third parties dealing with those people and to ensure that a successor agent knows when he has authority and also to avoid spawning litigation as to transactions and the issue of when someone might have become incompetent as an agent earlier on. Is the, is Justice Carter correct that the majority's decision in this case is very inconsistent in one situation affecting the, on this form they say there's no liability and when they say there is? I believe so, Your Honor. I think Justice Carter was dealing with the situation of yes, it's clear that a successor agent does not have any authority under a power of attorney until he is empowered and he has no fiduciary duty. Then I think he read that along with the definition of agent, which is in his dissent in the case that we're appealing, that that was a stretched reading by the appellate court of Section 2-10.3b, ignoring the definition of agent and directly contradictory to the holding in the consolidated case that a successor agent has no power. Only the agent does. So yes, I believe that that was his point and we obviously concurred with it. In conclusion, Your Honors, I would ask that the appellate court in the case that we have appealed be reversed and the trial court's original dismissal of the action be affirmed and that the appellate court be affirmed in its ruling in the consolidated case. If you have any other questions, if not, I believe I can conclude. Thank you. Thank you. Mr. Hupp. May it please the Court. Mr. Siegler. I have practiced law for 39 years now and since 1987 have drawn hundreds of these statutory powers of attorney in my estate planning practice. They are wonderful instruments. Sir, would you give us your name, please? Oh, I'm sorry. George Hupp. Thank you. I represent Ruth Alford, the executor of the estate of Thomas Shelton and Doris Shelton and the plaintiff in both causes brought in Grundy County. As I mentioned, I've drawn hundreds of these because these powers of attorney for estate are wonderful instruments. But when I'm talking to people, I give them certain warnings about them and that's what we're about here today is the problems that can occur with these because I tell my clients these can be abused. Now, the advantages of using the power of attorney is that it mainly is outside the court system. Instead of doing a guardianship where a guardian has to account to the court every year, which costs money, instead of having to file and pay a filing fee on the court and a guardian ad litem fee, the power of attorney saves a tremendous amount of money by staying outside the court system. It saves also time and mainly the reason people like the powers of attorney is the privacy aspect to it. In other words, when you have a guardianship in court, there are many aspects of that that are open to public inspection and people don't like to see that. They like the fact that they can use a power of attorney to have somebody manage their property for them, especially at a time when they cannot do it themselves. Now, this advantage that I've just outlined for you can be a disadvantage because I just mentioned powers of attorney can be abused and this is a particular situation where that's exactly happened. The advantage of being outside the court system becomes a disadvantage when we're trying to uncover fraud because this is what this case is all about. It is a presumption of fraudulent conveyance by an agent, by parents to their son. Yes. Is it your position that the successor agent, the son, has a duty as a fiduciary while the first designated agent is still acting? Only under the statute, which Mr. Sigler was talking about, 10.2-3B, where it talks about an agent can be liable for the acts of another agent if he sees that other agent acting improperly. So, yes, even though Rodney Shelton may not have been the agent at the time, under 10.3, he can be liable if he sees his father acting as agent for his mother improperly acting on her behalf. Yes. A designated agent assumes no duties until he or she starts to act. Isn't that true, generally? Well, normally that would be the case, but that's the other aspect of this case, Your Honor. So, Mr. Sigler was not liable if his father was incompetent. No, but of course, then he moved from second place to first, but he still hadn't become the agent, had he? No, he had become the agent, in effect, by virtue of the language of the power of attorney, which says, if any agent named by me shall die, become incompetent, resign or refuse to accept the office of agent, naming the following, each to act alone and successfully, as my successors, my agent, my son, Rodney Shelton. He had moved up by virtue of the fact that Doris was incompetent. What about paragraph 8? A person shall be considered to be incompetent if, while the person is an adjudicated incompetent or disabled person. What does adjudicated incompetent mean? Adjudicated incompetent would be where there was an actual guardianship and an order stating that she is a disabled person. And that didn't occur? That did not occur, but that was not required, Your Honor, because it says, or, at the very end of that, or is a person unable to give prompt and intelligent consideration to business matters as certified by a licensed physician, and that's what we provided. So, no, there was not an adjudication. Now, getting back to this idea of the disadvantage of the power of attorney is the fact that it is outside the court system and, therefore, fraud cannot be uncovered readily. My client's living in Texas. Her brother is back here in Illinois convincing mom and the dad, excuse me, to execute these powers of attorney, giving the entire farmland to him, two farms total to him, therefore denying his mother the right to the income from the farm at a time when she needed it badly, and also, of course, eventually denying my client who was to receive half of the estate when the parents died. So I have seen these powers of attorney be used in a fraudulent situation to conceal. I mean, people who commit fraud always want to conceal that fraud, don't they? And I have seen these powers of attorney used in the family where they have used it to keep the other family members in the dark so that they cannot ask questions, so they cannot uncover fraud. And so we have a situation here to where my client doesn't even know about this fraudulent activity on her brother's part until after the parents have died. And again, tell me what the fraudulent activity on the brother's part was. Well, there is a presumption of fraud, of course, where he gets, in the case where Thomas gave him a deed, there is a presumption of fraud. Is that statutory or where does it come from? This is common law, that it's an agent who receives any transaction with the principle there is a presumption of fraud that arises. Then he has to be an agent for there to be a fraud. Yes, he has to be the agent under the power of attorney. That's why it was important that we established that Doris was not the agent and that Rodney had moved up to the first position. But in that situation, aren't you talking about the actions of Thomas, the father who conveyed the form to his son? Right. That created the presumption of fraud because Rodney was Thomas' agent. He wasn't acting though, was he? I'm sorry? He wasn't acting as Thomas' agent. He was designated. Well, we don't know exactly what he was doing. We know that by virtue of the power of attorney language and by virtue of the fact that his mother was unable to give prompt and intelligent consideration to business matters as certified by her licensed physician, that she was no longer the agent under Thomas' power of attorney and therefore Rodney moved up into that position. So you're arguing that if Thomas, as the principal, makes a deed to someone who has been designated as a power of attorney, even though he doesn't do the action, the designated agent, in fact, is committed a fraud by accepting it. The presumption of fraud arises because Rodney became his father's agent. Isn't the classical thought on that presumption based upon the agent actually doing the conveying and there's a presumption of fraud? Is that not necessary? No. No. And the appellate court cited that in their opinion that it is not required. That either Thomas could have executed the deed or Rodney could have executed the deed as an agent for his father. Either way, the presumption of fraud arises. I noticed you didn't cite any case law for this at all. That's the question of the statute. Is there case law? That is case law. But you didn't cite it. I mean, the appellate court... Is that right? You didn't cite it in the direction of any cases that support your position? Well, the appellate court cited it in their opinion. Cases that support... I don't recall if they cited the opinion. They cited the law in their opinion that the presumption of fraud arises. I don't think they cited a case either. Okay. But that's in the appellate court opinion. The... Could you clear us up? You're talking about him being Thomas' agent and being Doris' agent. Was he both? You said when Doris became incompetent, he moved up? Right. And he moved up because he was supposed to be protecting Doris? Is that what you're saying? No. We have two cases here. Okay. The first one, Thomas, the father, had a power of attorney, named his wife, named his son as backup. Okay. Thomas deeded his interests in the farm to Rodney, the son. Right. Our position is that because Doris was incompetent, and by virtue of the power of attorney language, that Rodney moved up to the first position as agent instead of his mother. And therefore Rodney had now received a benefit from his father, and that creates the presumption of fraud. The other case is that they used Doris' power of attorney. She had a power of attorney which named Tom, the father, and Rodney as the backup. They didn't have Doris sign the deed to Rodney like they did Thomas. They had Thomas as agent under Doris' power of attorney sign the deed to Rodney. And that brought in the statute, 10.3, where Rodney sits there and watches his father do something that benefits him, Rodney, but hurts his mother. He's giving away his mother's farm, not even reserving an income for her. He has to know she's incompetent because she was incompetent. And so he sits there and that's where... And that seems to be a key piece. I mean, certainly Thomas has the authority to transfer his own property rights. He does. And because he's the power of attorney for his wife, he has the authority to transfer her rights. Correct. Okay. So is the whole key to this how we look at whether or not the statement by the doctor years later that she was incompetent, whether or not that somehow changed all of his relationships even though there had not been an adjudication? Is that the key to this? Your Honor, one of the points I wanted to get to here is that we have to look at the circumstance of this particular case. The appellate court, in its opinion, stated a policy about the integrity of powers of attorney and people being able to rely upon them. In this situation, we're not dealing with third parties here. We're dealing with family members, all of whom know what's going on here. Rodney knew his mother was incompetent. Rodney knew he was the agent. How do we know that? Huh? How do we know that? Well, that's what we alleged. I mean, we're coming here from the pleadings. But that goes back to Justice Conroy's question about the need for a certification from a doctor. But a certification from a doctor, we had a certification from a doctor. Yeah, years later, as Justice Tice just said. What's wrong with the appellate court's analysis that says allowing incompetency determinations to be made years after the fact could create uncertainty? Because it's impractical. And lead to situations, let me just finish, where an acting power of attorney makes financial decisions for a long period of time before he is declared incompetent or replaced with a successive POA. Okay, that was what I was saying just a minute ago, Your Honor. First of all, it's impractical to expect Ruth Shelton, excuse me, Ruth Alford, to know that her brother was even doing this and to go and get a adjudication or a physician's affidavit at that time when she didn't even know what's going on. Many times when you're uncovering fraud, you're uncovering it years later because it was kept a secret and that's exactly what happened here. Now, the policy, again, that the appellate court... Was it a secret that she was incompetent or was it a secret that he transferred the property? Okay, I didn't... I said what you said it was a secret. What was the secret? Is it the secret was that Doris was incompetent or was the secret was that they... If Mr. Huff, if you... I've been hearing problems lately. But if you get away from the microphone, we don't... And my earpiece didn't work there that they gave me, so... Okay, we'll try to speak up. No, not that Doris, it was a secret that Doris was incompetent. It was a secret that they were doing these deetings. So the daughter could have easily known her mother was fine or not? Well I think she knew that her mother was not fine, but that doesn't necessarily mean that she runs out and gets an adjudication or a physician's report when there's no reason to do that. That's again the privacy thing. Many people don't want to do that until it's necessary to do that. Well when she learned that her brother had done this, then she had to go back and do it. Or that her father had done this. I'm sorry? That her father had done this. Her father had transferred the property to... Right, right. And the power of attorney language does not say that it can't be done two years later. They talk about at the time was Doris incompetent, therefore she couldn't have been Tom's agent under the power of attorney. And being close to the transaction, you say, well how maybe did Rodney know about it? Rodney accepted the deed and he is obviously here fighting to hold onto that farm. He had full knowledge of what was being done here. He accepted the deed. Now let's look at the policy of the appellate court here that they announced. Your Honor, you made mention just a minute ago is that the appellate court is saying, look, if we can go back two and three years later and then do a power of attorney, that can be a real problem and absolutely I agree. You have third parties that rely upon a power of attorney. But we're not talking about third party. We're not talking about Doris Shelton, a designated agent, being incompetent. We're not talking about Doris Shelton acting as the agent. Because that policy that they announced would apply if Doris had signed things and then years later we went back and showed that she was incompetent and tried to undo that. That's not what this case is about. This case is about showing that she was not the agent under the power of attorney and therefore Rodney moved up by virtue of the language of the power of attorney. So the policy should be that in that instance you can go back and retroactively show that someone could not have been the agent, you see. Does a designated agent have to do anything to accept the duties as agent? The statute states that the agent does not have to accept the duties at all. But here in this case, Rodney was obviously involved in this transaction and that's why your policy I think that you need to announce here is very important. Is it important to know whether Rodney knew that he was designated? If he didn't know that he was the agent and his father conveyed these farms to him, where are you then? Yes, I would agree with you, Your Honor, that it's important that he would know. Of course we're at the pleading stage here and we've alleged that he did know. However, he did accept the deed. He has owned the farms, claimed ownership of the farms for the last four years, five years, six years, and he's fighting to hold on to them here. So for him to sit there and say, well, I didn't know I got these farms. No, I'm saying he didn't know that he was, if he didn't know he was the agent designee or successor. Well we've alleged that he Because the father made the conveyances. It wasn't the son acting as the agent that made the conveyances, which would be a different case, easy case, I think. Well we've alleged that he was aware of all these things, okay. And so the situation is he moves up into the first spot and now he owes a fiduciary duty to his father. He owes a fiduciary duty to his mother by virtue of the plain and clear language of 10.3. I have no problem with that. They call it success of agents, but how can you say that it's not a successor agent when it talks about another agent? When the legislature, I think, realized that there was going to be a problem here, that you may have successor agents watching another agent ahead of them do something that hurts the principle and he should be liable. And that's what we're saying is that Rodney Shelton should be liable and of course the appellate court agreed with us on that. So we're asking that the court here reverse the trial court on its dismissal of the action in the Thomas Shelton estate wherein it held that we could not retroactively go back and show that she was incompetent. But again, the purpose of showing her incompetency is not to undo a power of attorney and affect third parties. It's only to uncover the fraud here within the family situation that occurred. Thank you. Thank you. Mr. Sigler. First, if the legislature intended, knowing that successor agents were not agents under the Act, I believe that the legislature would have had the wisdom to have included successor agents either in the definition of an agent or in subsection B of the Act at issue. It's remarkable that there is no reference to successor agents in that provision, only agents, which is completely, which completely comports with the common law and the statutory law that the agent is the one who has power and a fiduciary duty to the principle. Mr. Hupp, I think goes outside the record a bit, but I'm not going to take anyone to task on that. This is a case on the pleadings, Your Honors, and to clarify, because it can get a little confusing because there are two cases, they are different legal theories. There is no issue as to the agency under Doris's power of attorney. Thomas was the agent. My theory is based on the statutory action that we are appealing. The entire theory is based on 210.3B. There are no allegations of actual fraud anywhere in either of these cases. In terms of the consolidated case and the issue of retroactive determination of incompetency, there is no allegation of actual fraud. The plaintiff simply requests, requested the trial court, the appellate court, and this court to recognize a retroactive positions report two years earlier to retroactively, this is the impact, their position is that that retroactively and judicially makes Rodney Shelton the agent on December 1, 2011. That's what they want you to find. Two years later, I guess we could almost use note pro tonk, back two years later because of this subsequent positions report in this litigation, that that makes for all the power of attorney. That's what the impact of that case is and that's what the impact of their position is and the appellate court rightfully disagreed with it. The paragraph eight of the statutory powers of attorney involved in these cases, your honors, is very clear and it talks about designation of a successor agent and what has to happen for one to become an agent and it says upon certain events. It doesn't say upon certain events happening whenever. A decade from now, the temporal relationship is clear in the power of attorney. It is something that needs to be done now and as of that moment when it is done under that power of attorney, everybody can know that the successor agent is now an agent. A court couldn't subsequently two years later declare someone incompetent and declare note pro tonk that Rodney Shelton was the agent back then. I don't believe that the court in this state would have any means by which to do so. There's no difference in that or a physician's certification of incompetency. They have to happen at a certain time and that's the time they become effective, period. A strictly construed power of attorney and the clear non-ambiguous language of these powers of attorney indicates just that. That's all I have. Thank you. If the appellate court is affirmed on its issue in the Thomas Shelton case about the retroactiveness of the showing that Doris was incompetent and elevating Rodney up to the first position, it's just going to open the door for people like Rodney Shelton to do what he has done here. We need to have a strong policy throughout the state of Illinois that says, look, when third parties are not involved, and that's exactly what we're dealing with here, we're not dealing with third parties that are going to be damaged by doing this retroactive recognition that she was incompetent and moved Rodney up. It's only going to affect Rodney Shelton and it's only going to affect my client. And Rodney Shelton knew that his mother was incompetent at the time and he knew he was engaging under the power of attorney and he knew that he was getting his father to do something that was wrong. And so, what's the policy of this court? What's the policy of this state going to be? That we're going to allow that? Are attorneys to point to this case someday and say, hey, you can get away with this because you can't find out that your mother was incompetent at the time. You didn't go and have the physician's report. You didn't go into court. Hindsight is 20-20. And so, this is a very important case. I really believe in powers of attorney. They're wonderful instruments and I want to keep drawing them from my clients, but I deal with the abuses of them quite often. And this is one of them. Let's not encourage and enable the abusers to abuse the powers of attorney. Thank you. Thank you. Thank you, Mr. Sigler, Mr. Hupp. Case numbers 121-199 and 121-241, Alford versus Huffman. Thank you for your arguments today. You are excused.